**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| **GREGORY JOHN BIRMINGHAM,** | * | |
| Appellant, | * | |
| | * | **United States District Court** |
| v. | | **Case No.:   PWG-15-108** |
| | * | **Aversary Proc. No. 14-00378** |
| **PNC BANK, N.A., INC.,** *et al.*, | * | |
| Appellees. | * | |
| -------------------------------------------------------- | * | |
| In re: | | |
| **GREGORY JOHN BIRMINGHAM,** | * | **Case No. 11-16614-WIL** |
| | | **Chapter 7** |
| Debtor. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Appellant–Debtor appeals the Bankruptcy Court's dismissal of an adversary proceeding that sought a declaratory ruling that a Chapter 13 plan could modify the undersecured mortgage on Debtor's primary residence. Appellant argues that, because the deed of trust also conveyed rights to certain insurance proceeds, escrow funds, and condemnation awards, the loan is not secured "only" by the Debtor's primary residence and therefore can be modified. Appellee asks me to affirm the ruling of the Bankruptcy Court and hold that those other sources of payment merely were incidental to the security interest in the property itself. I agree with Appellee and affirm.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

Appellant–Debtor Gregory John Birmingham filed his voluntary Chapter 13 Petition on May 23, 2014. Ch. 13 Pet., ECF No. 2. Among the claims against Debtor is a mortgage (the "PNC Mortgage") in the amount of $309,449.51 held by Appellee PNC Bank, N.A. ("PNC") and secured by a deed of trust (the "Deed of Trust") on Debtor's primary residence, 11721 Chilcoate Lane, Beltsville, Maryland 20706 (the "Property"). *See* Schedule D, ECF No. 2-10. According to Debtor's Schedule D, the Property is valued at only $206,500.00 and there is an $86,000 arrearage on the mortgage. *Id.*

The Deed of Trust grants PNC a security interest in the Property and provides certain additional protections to PNC. Section 3 of the Deed of Trust states:

> Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of the Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." . . . .
> . . . .
> If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments.

Deed of Trust § 3, ECF No. 1-13.

Section 5 of the Deed of Trust provides:

> Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "Extended

coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. . . .
    If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.
. . . .
    . . . Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

*Id.* § 5.

Finally, Definition (M) of the Deed of Trust creates a category of "Miscellaneous Proceeds," which includes

> any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

*Id.* ¶ (M).

Pursuant to Section 11,

> All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.
>     . . . .
>     In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

*Id.* § 11.

On June 4, 2014, Debtor filed his Original Chapter 13 Plan, which included a cram-down on PNC's mortgage on the Property. ECF No. 2-13. PNC objected to the plan arguing, *inter alia*, that the cram-down violated § 1322(b)(2) of the Bankruptcy Code, PNC's Obj. to Confirmation of Debtor's Ch. 13 Plan, ECF No. 2-33, and the Bankruptcy Court denied confirmation with leave to amend, Order Denying Confirmation of Ch. 13 Plan with Leave to Am., ECF No. 2-35. Debtor filed an Amended Chapter 13 Plan on September 18, 2014, again seeking to cram-down on the PNC mortgage, Am. Ch. 13 Plan, ECF No. 3-4, and again drawing an objection from PNC, PNC's Obj. to Confirmation of Debtor's Am. Ch. 13 Plan, ECF No. 3-18. Again the amended plan was denied confirmation. Order Denying Confirmation of Ch. 13 Plan with Leave to Am., ECF No. 3-28.

On June 25, 2014, Debtor filed a Complaint for Declaratory Action to Determine Scope, Validity, and Extent of Lien of Defendant Pursuant to 28 U.S.C. §§ 2201–2202; 11 U.S.C. §§ 105(a), 506(a), 2201 (11721 Chilcoate Ln Beltsville, MD 20705) ("Compl."), ECF No. 1-2. According to the Complaint, although 11 U.S.C. § 1322(b)(2) prohibits a debtor from cramming down a debt secured by the debtor's principal residence, the provisions in the Deed of Trust for Miscellaneous Proceeds, Escrow Items, and certain insurance items (collectively, the "Additional Items") represent additional security interests created by the Deed of Trust that bring it outside the scope of § 1322(b)(2). *See* Compl. ¶¶ 6–11. Accordingly, Debtor sought a declaration that the PNC Mortgage could—and should—be treated as a partially unsecured claim subject to modification. *Id.* ¶ 15.

PNC filed a Motion to Dismiss Adversary Complaint ("Def.'s Mot. to Dismiss"), ECF No. 1-9, and a supporting Memorandum ("Def.'s Dismiss Mem."), ECF No. 1-11, arguing that

4

the Additional Items constitute "incidental property" considered part of the debtor's principal residence, and therefore they do not expose the PNC Mortgage to a cram-down. Debtor filed a placeholder Response, ECF No. 1-24, followed by a substantive response memorandum, ECF No. 1-25, reiterating and expanding upon the legal positions set forth in the Complaint, and PNC filed a its Reply, ECF No. 1-29.

On December 1, 2014, Bankruptcy Judge Wendelyn I. Lipp granted the motion to dismiss, Order, ECF No. 1-33, noting that the issues raised by Debtor were identical to arguments that repeatedly have been rejected by the Bankruptcy Court for this District.

Debtor timely noticed this appeal on December 16, 2014, Notice of Appeal, ECF No. 1, and it was docketed in this Court on January 13, 2015. Pursuant to Fed. R. Bankr. P. 8019(b)(3), I have examined the briefs and find that the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

## II.    STANDARD OF REVIEW

The district court reviews a bankruptcy court's findings of fact for clear error and conclusions of law *de novo*. *Fairchild Dornier GMBH v. Official Cmte. of Unsecured Creditors (In re Dornier Aviation (N. Am.), Inc.)*, 453 F.3d 225, 231 (4th Cir. 2006). "With respect to the bankruptcy court's application of the law to the facts, the district court reviews for abuse of discretion." *Coggins & Harman, P.A. v. Rosen (In re Rood*, No. DKC-12-1623, 2013 WL 55650, at *2 (D. Md. Jan. 2, 2013).

## III. DISCUSSION

The Bankruptcy Court dismissed Birmingham's complaint pursuant to Fed. R. Civ. P. 12(b)(6), as incorporated through Fed. R. Bankr. P. 7012(b). *See* Order, ECF No. 1-33. Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79; *see Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

The first argument raised by Appellant is that dismissal was improper because his complaint satisfied the requirements of Fed. R. Civ. P. 8(a). However, this does not appear to have been a basis for the Bankruptcy Court's dismissal, *see* Order, ECF No. 1-33, and so that issue is not properly before me on appeal. And in any event, Appellees do not argue, nor could they, that Appellant's Complaint does not satisfy the pleading requirements of Rule 8(a);

whatever shortcomings his legal argument may possess, he has pleaded his case clearly enough to satisfy Rule 8, *Iqbal*, and *Twombly*. What he has *not* done is state a viable legal theory to sustain his factual pleadings. His complaint fails as a matter of law.

This is because the fact that Appellant has alleged sufficient facts to satisfy Rule 8 does not mean that he has stated a valid claim under Rule 12(b)(6). To the contrary, he has done so only if his view of the complex interaction between several provisions of the Bankruptcy Code is correct—a view that Appellant's counsel zealously advances, undeterred by his uniform lack of success in making the identical argument before several Judges in this District. *See Akwa v. Residential Credit Sol'ns, Inc.*, 530 B.R. 309 (D. Md. 2015); *see also Donaldson v. M&T Bank*, No. CCB-15-416 (D. Md. filed Feb. 11, 2015); *Abdosh v. Ocwen Loan Servicing, LLC*, No. PJM-14-2916 (D. Md. filed Sept. 12, 2014).

"Under Chapter 13 of the Bankruptcy Code, individual debtors may obtain adjustment of their indebtedness through a flexible repayment plan approved by a bankruptcy court." *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 627 (1993). Preferential treatment is given to secured claims over unsecured claims, and section 506 of the Bankruptcy Code provides that

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, . . . and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.

11 U.S.C. § 506(a). Accordingly, an undersecured claim (such as the underwater PNC Mortgage at issue here) typically may be bifurcated into a secured portion reflecting the value of the security and an unsecured portion representing the excess. However, 11 U.S.C. § 1322(b)(2) provides an exception to this general rule, insofar as a Chapter 13 plan may "modify the rights of

7

holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence*." 11 U.S.C. § 1322(b)(2) (emphasis added).  Known as the homestead mortgage anti-modification provision, the Supreme Court has held—and the parties do not dispute—that this provision gives the holder of a claim secured by an interest in real property that is the debtor's principal residence a right against bifurcation that supersedes the general rule set forth in § 506(a).  *Nobelman*, 508 U.S. at 332.  That is to say, where a debtor's principal residence is secured by an underwater mortgage, the underlying debt cannot be bifurcated or modified as part of a Chapter 13 plan.

Appellant does not dispute this plain proposition, but instead quibbles over what it means for a property interest to be "secured only by a security interest in real property."  Appellant's Br. 9–20.  According to Appellant, the Additional Items in the Deed of Trust provide additional security for the PNC Mortgage such that it no longer is secured "only" by an interest in the real property.  *Id.*  If Appellant is correct, then the PNC Mortgage could be bifurcated into a $206,500.00 secured component and a $102,949.51 unsecured component, and the proposed cram-down of the PNC Mortgage would be permissible.

Under the Bankruptcy Code, a "'security interest' means [a] lien created by an agreement," 11 U.S.C. § 101(51), where a "'lien' means [a] charge against or interest in property to secure payment of a debt or performance of an obligation," § 101(37).  If the Deed of Trust provides an interest in anything other than the Property itself to secure the mortgage, then the PNC Mortgage is subject to modification.  "The conclusion that a security interest can be modified under such circumstances does not depend upon the enforceability of the additional security interest or the availability or value of the additional collateral when the Chapter 13 case

8

is filed." *See In re Hughes*, 333 B.R. 360, 362 (M.D.N.C. 2005). Even a theoretical, contingent, or worthless property interest can suffice.

However, the definition of a "debtor's principal residence" under the Code includes not only the home itself, but also "incidental property," 11 U.S.C. § 101(13)(A), which

> means, with respect to a debtor's principal residence—
> (A) property commonly conveyed with a principal residence in the area where the real property is located;
> (B) all easements, rights, appurtenances, fixtures, rents, royalties, mineral rights, oil or gas rights or profits, water rights, *escrow funds*, or *insurance proceeds*; and
> (C) all *replacements* or additions.

§ 101(27B) (emphases added). According to Appellees, the Additional Items are nothing more than "incidental property," which are inextricably part and parcel of the Property and do not remove it from the anti-modification provision of § 1322(b)(2).

Importantly, in a recent case, another Judge of this Court rejected Appellant's identical argument and found that "escrow funds, insurance proceeds, and miscellaneous proceeds are incidental property that do not represent their own separate security interests." *Akwa*, 530 B.R. 309. In that case, Judge Hazel noted that whereas the provision of a deed of trust that "specifie[d] that the borrower 'grants and conveys'" an interest in the property itself and thereby "create[d] a security interest in the residence," it contained "no similar language in the document's discussion of escrow funds, insurance proceeds, or miscellaneous proceeds. Indeed, the language contained in those provisions explicitly ties the funds to ensuring that the lender's collateral—the real property—is preserved." *Id.* at 313. Judge Hazel also relied on extensive case law holding that insurance, "escrow funds[,] and miscellaneous proceeds that are explicitly tied to the real property" are "'part of the possessory bundle of rights' [that] do not extend a lender's security interest beyond the real property." *Id.* at 313 (quoting *Allied Credit Corp. v. Davis (In re Davis)*, 989 F.2d 208, 213 (6th Cir. 1993). Although the holding of another Judge

of this Court is not binding on me, I find Judge Hazel's reasoning to be highly persuasive, and reach the same conclusion in this case presenting nearly identical facts and legal arguments.

First, "benefits which are merely incidental to an interest in real property" generally are not "additional security for purposes of § 1322(b)(2)." *In re Davis*, 989 F.2d at 212. This applies to any of the "items which are inextricably bound to the real property itself as part of the possessory bundle of rights." *Id.* at 213. The Code itself is unambiguous that "escrow funds, or insurance proceeds" fall within this definition, 11 U.S.C. § 101(27B), and as Judge Hazel observed, condemnation proceeds (which, here, fall into the category of Miscellaneous Proceeds) also have been found to be within its scope. *See Akwa*, 530 B.R. at 314; *see also* 11 U.S.C. § 101(27)(C) (incidental property includes "all replacements or additions"). This would appear to end the inquiry: if the Additional Items all fall within the Code's definition of a principal residence, then the PNC Mortgage is secured only by the principal residence and cannot be modified.

Appellant seeks to resurrect his argument in the tension he perceives between the definitions in § 101 and the restriction in § 1322(b)(2). Because § 1322(b)(2) only applies to "*real property* that is the debtor's principal residence," and § 101(13A) defines a principal residence "without regard to whether that structure is attached to real property," Appellant concludes that the two definitions are not co-extensive. Appellant's Br. 11–13. True enough, but irrelevant to the facts of this case. The anti-modification clause of § 1322(b)(2) does not apply where a mortgage is secured by a mobile home that is considered real property, *see Ennis v. Green Tree Servicing, LLC (In re Ennis)*, 558 F.3d 343, 347 (4th Cir. 2009); *In re Melara*, 441 B.R. 749, 752 (M.D.N.C. 2011), or by a combination of real and personal property, *Hammond v. Commonwealth Mortg. Corp. of Am. (In re Hammond)*, 27 F.3d 52 (3d Cir. 1994) (finding anti-

modification provision does not apply where mortgage also conveys security interest in "appliances, machinery, furniture and equipment"). It also does not apply to a mortgage secured by an interest in real property that serves as the debtor's principal residence but also includes other rental units because such property is not "only real property that is the debtor's principal residence." *See Scarborough v. Chase Manhattan Mortg. Corp. (In re Scarborough)*, 461 F.3d 406, 411 (3d Cir. 2006); *Lomas Mortg. Inc. v. Louis*, 82 F.3d 1, 7 (1st Cir. 1996). But this does not speak to the underlying rule that "benefits which are merely incidental to an interest in real property" generally are not "additional security for purposes of § 1322(b)(2)." *In re Davis*, 989 F.2d at 212 (6th Cir. 1993).

On that point, Appellant has relied on a line of cases out of bankruptcy courts in North Carolina holding that provisions that expressly create a security interest in escrow accounts create an additional, separate security interest under North Carolina law. *See* Appellant's Br. 14; *see also In re Murray*, No. 10-10125-8-JRL, 2011 WL 5909638 (Bankr. E.D.N.C. May 31, 2011); *In re Martin*, 444 B.R. 538 (Bankr. M.D.N.C. 2011); *In re Bradsher*, 427 B.R. 386 (Bankr. M.D.N.C. 2010); *In re Hughes*, 333 B.R. 360 (Bankr. M.D.N.C. 2005).[1] I am not aware of a case from any other state that has reached the same conclusion, and several courts expressly have rejected it. *See In re Inglis*, 481 B.R. 480, 484–85 (Bankr. S.D. Ind. 2012) (holding that an

---

[1] I note that the first decisions in this line of cases rested on the fact that the loan documents expressly provided that escrow payments constituted additional security for the loan. *See Bradsher*, 427 B.R. at 386 ("the loan documents purport to provide a security interest for the indebtedness secured by the deed of trust in escrow funds in addition to a security interest in the residential land and housing structure"); *Hughes*, 333 B.R. at 363 (noting that the "documents do not simply provide for escrow payments" but rather "require the borrower to pledge the escrow funds as 'additional security'"). Although some later cases did not expressly rely on such language, there is nothing in the Deed of Trust in this case that expressly pledges any of the Additional Items as security above and beyond the Property, and therefore the holdings of *Bradsher* and *Hughes* do not apply here. *See Mullins v. Wells Fargo Bank, N.A. (In re Mullins*, No. 11-11176C-13G, 2012 WL 2576625, at *2 (Bankr. M.D.N.C. July 3, 2012).

additional security interest in escrow funds cannot take a mortgage outside of the scope of § 1322(b)(2) because "[i]t is unlikely that Congress would have intended for the protections of § 1322(b)(2) to be forfeited by adhering to a practice that was so commonplace in the industry"); *In re Mendez*, 255 B.R. 143, 146–47 (Bankr. D.N.J. 2000) (finding that a mortgage that confers rights to fixtures, easements, and condemnation awards is not exempt from the anti-modification clause). As the Bankruptcy Court for the Eastern District of Pennsylvania aptly explained:

> Although [escrow] funds themselves are personal property [under state law], . . . the Court holds as a matter of federal bankruptcy law that they are not separate from the real estate within the meaning of section 1322(b)(2). . . . Escrow accounts are, moreover, a typical feature in every home mortgage, and to hold that their existence removes a mortgage from the anti-modification clause emasculates the statute. The Court cannot comprehend that Congress intended such a result.

*Rodriguez v. Mellon Bank, N.A. (In re Rodriguez)*, 218 B.R. 764, 777 (Bankr. E.D. Pa. 1998).

I concur with these decisions. It is apparent that the Additional Items included in the PNC Mortgage fall under the heading of "incidental property" under the Bankruptcy Code. Section 101(27B) expressly includes "escrow funds" and "insurance proceeds" in this category. And because "incidental property" also includes "all replacements or additions," 11 U.S.C. § 101(27B)(C), it also covers the category of Miscellaneous Proceeds described in the Deed of Trust, which includes payments to replace the value of the property if is damaged, destroyed, condemned, or less valuable than had been represented. *Cf.* Hr'g Tr., *Donaldson v. M&T Bank (In re Donaldson)*, Adversary Proc. No. 14-00321, at 22:4–19 (Bankr. D. Md. Sept. 24, 2014). Nor do the Additional Items have any value of their own separate and apart from the Property and the PNC Mortgage; to the contrary, they all exist only to give full effect to the PNC's security interest, which otherwise could be frustrated by a superior lien or by destruction or condemnation of the Property. *See Akwa*, 530 B.R. 313.

I also note that to hold that the Additional Items remove the PNC Mortgage from the scope of § 1322(b)(2) would be to give lenders a Hobson's choice between leaving a mortgage unsecured in the event of disaster or condemnation on the front-end or subjecting it to a cramdown in the event that the borrower files for bankruptcy. If the purpose of the anti-modification provision was "to encourage the flow of capital into the home lending market" by protecting lenders, *see Nobelman*, 508 U.S. at 332 (Stevens, J., concurring), it simply cannot be squared with Appellant's position.[2] And in light of the ubiquitous use throughout the country of terms like those in the PNC Mortgage, ruling in Appellant's favor would eviscerate the anti-modification provision nationwide. No doubt, many debtors with underwater mortgages would consider this a favorable outcome, but there is no question that it is not what Congress intended. "[I]n every case we must respect the role of the Legislature, and take care not to undo what it has done. A fair reading of legislation demands a fair understanding of the legislative plan." *King v. Burwell*, ---- S. Ct. ----, 2015 WL 2473448, at *15 (June 25, 2015). This principle cannot be squared with an interpretation that would render the anti-modification provision inapplicable to virtually all residential mortgages.

---

[2] Because the Bankruptcy Code clearly provides that the Additional Items are incidental property that do not affect the applicability of the anti-modification provision, I see no need to consider the underlying question of whether those items constitute personal property as a matter of Maryland law. *Cf. Butner v. United States*, 440 U.S. 48, 55 (1979) (holding that "[p]roperty interests are created and defined by state law," "[u]nless some federal interest requires a different result").

## IV. CONCLUSION

For the aforementioned reasons, the ruling of the Bankruptcy Court dismissing Appellant's complaint will be AFFIRMED.

A separate Order follows.

Dated: July 7, 2015                                                                  /S/
                                                                           Paul W. Grimm
                                                                           United States District Judge

dsy